Gates v. Texas

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-433-CR

BRENT GOWE GATES APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM COUNTY CRIMINAL COURT NO. 2 OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant Brent Gowe Gates appeals his conviction for driving while intoxicated (DWI).  In four points, Gates argues that the trial court erred by failing to grant a mistrial, by admitting testimony regarding his refusal to submit to a blood test, and by admitting evidence obtained from an allegedly illegal stop.  We will affirm.

II.  Background

On September 19, 2004, Roanoke Police Officer Luther Cosby observed a car traveling at a high rate of speed in Denton County, so he activated his emergency lights and pulled in behind the car.   As Officer Cosby drove behind the car, he observed the car swerving and observed the original driver and passenger climb over one another to switch seating positions, so that the passenger became the driver.  The car ran over a road construction sign and came to rest in a bar ditch.  As Officer Cosby approached the stopped car, he instructed the driver—Gates, who had been the initial passenger—to stay in the car; but Gates got out of the car, walked to the edge of the road, and lay down.  Officer Cosby then handcuffed Gates and escorted him back to the car. 

Officer Cosby noticed a strong odor of alcohol coming from inside the car and saw that Gates was having difficulty standing and walking.  After Officer Cosby questioned Gates and determined that Gates was the owner of the car, he inventoried the car.  Pursuant to the inventory search, Officer Cosby discovered an open bottle of Bud Light, a marijuana-type bong, a 500,000 volt stun gun, a baggie of marijuana residue, and a twelve-pack container of Bud Light with eight bottles remaining.  Officer Cosby then took Gates back to the police station to conduct sobriety testing.  

At the police station, Officer Cosby took Gates into the intoxilyzer room and read Gates the statutory warnings regarding breath and blood tests.  Officer Cosby attempted to conduct two sobriety tests on Gates, but Gates was unable to perform the tests.  Officer Cosby administered a breath test to Gates, and the results were negative for alcohol consumption.  Based on Gates’s inability to perform the sobriety tests and the negative breath test results, Officer Cosby thought Gates might be intoxicated by a substance other than alcohol and sought Gates’s consent to administer a blood test. 

Gates initially, and repeatedly thereafter, consented to the blood test.   But by the time Officer Cosby took Gates to Denton for the test—several hours after the initial consent—Gates refused to take it.  Gates was arrested at approximately 9:36 p.m.  Gates agreed at 11:30 p.m. and 2:00 a.m. to submit to a blood test.  But between 2:00 a.m. and 2:30 a.m. during Gates’s transportation to Denton County, he changed his mind about submitting to a blood test.  Officer Cosby explained that Gates was transported to Denton County in a patrol car with another subject and that he heard the two discussing blood tests.  The other subject told Gates not to submit to a blood test because drugs would show up. 

At trial, Officer Cosby testified to the above facts, and Gates himself testified that he did initially, and subsequently repeatedly, consent to the blood test but that he later, ultimately refused to consent.  The jury convicted Gates of driving while intoxicated, and the trial court sentenced him to 160 days’ confinement, suspended for 20 months of community supervision.  This appeal followed.

III.  Reading Open Container Enhancement was Harmless Error

In his first point, Gates alleges that the trial court erred by denying his motion for mistrial.  The information charged Gates with DWI and alleged a punishment enhancement based on the discovery of an open container in the car.  
See
 
Tex. Penal Code Ann.
 § 49.04(c) (Vernon 2003).  After the State read, at the guilt-innocence phase of trial, the open-container punishment enhancement paragraph, Gates moved for a mistrial.  Noting that it probably was error for the State to read the enhancement paragraph to the jury at guilt-innocence, the trial court concluded nonetheless that any error was harmless.
(footnote: 2)
 We review a trial court’s ruling on a motion for mistrial under an abuse of discretion standard.  
See Ladd v. State
, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1070 (2000).  A mistrial is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile.  
Id.
  Thus, a trial court may properly exercise its discretion to declare a mistrial if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error in the trial.  
See Sewell v. State
, 696 S.W.2d 559, 560 (Tex. Crim. App. 1983)
.
 If the error complained of on appeal is not constitutional, as is the case here, we apply rule 44.2(b) and disregard the error if it did not affect Gates’s substantial rights.  
Tex. R. App. P.
 44.2(b); 
see Mosley v. State
, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied
, 526 U.S. 1070 (1999).

 We agree with Appellant that the prosecutor's reading of the open container allegation during guilt-innocence was improper because it is not an essential element of the offense of driving while intoxicated.  
Doneburg v. State
, 44 S.W.3d 651, 655 (Tex. App.—Fort Worth 2001, pet. ref’d).  The allegation is merely an enhancement provision, and as such it is properly reserved for the punishment phase of the trial.  
Id.
 (citing 
Wilson v. State
, 772 S.W.2d 118, 121-23 (Tex. Crim. App. 1989) and 
Frausto v. State
, 642 S.W.2d 506, 509 (Tex. Crim. App. 1982)).

Consequently, we turn to the issue of harm.  
See 
Tex. R. App. P.
 44.2(b).  At trial, Officer Cosby testified that he discovered an open bottle of Bud Light in Gates’s car.  Gates neither objected to nor controverted this testimony.  Accordingly, the information that was erroneously conveyed to the jury through the State’s reading of the open-container enhancement allegation was subsequently admitted without objection through Officer Cosby’s testimony.  We cannot say that reading the enhancement paragraph affected Gates’s substantial rights where the jury heard the same evidence from Officer Cosby without objection.  
See Mosley
, 983 S.W.2d at 259; 
see also Surredin v. State
, 165 S.W.3d 751, 753 (Tex. App.—San Antonio 2005, no pet.) (holding that any error in reading open-container enhancement was harmless where evidence concerning the open container would have been admissible during the guilt-innocence stage).  Thus, the error in reading  the enhancement paragraph to the jury at guilt-innocence was harmless.  
See 
Tex. R. App. P.
 44.2(b); 
Surredin
, 165 S.W.3d at 753.  Because the error was harmless, it would not require reversal on appeal, so the trial court did not abuse its discretion by denying Gates’s motion for mistrial.  
See Ladd
, 3 S.W.3d at 567; 
Sewell
 696 S.W.2d at 560; 
see also Surredin
, 165 S.W.3d at 753.

We overrule Gates’s first point on appeal.

IV.  Admission of Refusal Testimony 

In his second and third points, Gates contends that the trial court erred by admitting testimony regarding his refusal of the blood test.  A trial court’s ruling on the admissibility of evidence is reviewed under an abuse of discretion standard.  
Carrasco v. State
, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).  In other words, the appellate court must uphold the trial court’s ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case.  
Id.

A.  Requisite Statutory Warnings Given

In his second point, Gates contends that the trial court erred by admitting testimony regarding his refusal to submit to blood testing because the police did not provide him with the requisite statutory warnings.  Before police request consent to take a blood or breath test, they must inform the person orally and in writing of the requisite statutory warnings delineated in the transportation code.  
See 
Tex. Transp. Code Ann.
 § 724.015 (Vernon Supp. 2006).  If the person refuses to give consent after receiving those statutory warnings, the State may use such refusal as evidence against the person in a subsequent prosecution.  
Id.
 § 724.061.  However, the refusal is admissible only where police give the requisite statutory warnings.  
See Janak v. State
, 826 S.W.2d 803, 805 (Tex. App.—Texarkana 1992, no pet.).  

Here, it is undisputed that Officer Cosby both read and provided a written copy of the statutory warnings to Gates prior to requesting that he submit to a blood test.
(footnote: 3)  Therefore, Gates’s refusal to submit to the blood test was admissible under transportation code section 724.061.

Nevertheless, Gates argues that police were required to give the statutory warnings again after a five-hour lapse between the time the warnings were initially given and the time police finally attempted to actually administer the blood test.  But Gates repeatedly consented to the blood test during the five-hour delay.  This is not a situation where no discussion of the blood test occurred for five hours.  Here, Gates continuously indicated his willingness to consent to a blood test until he was advised otherwise by the other subject being transported to Denton County in the patrol car with him.  And both Officer Cosby and Gates himself testified that Gates refused to submit to the blood test 
after
 receiving the statutory warnings.  

Nothing in our jurisprudence indicates that police are required to give repeated statutory warnings after a person has repeatedly consented to a blood test.  
See, e.g., Erdman v. State
, 861 S.W.2d 890, 894 (Tex. Crim. App. 1993) (holding only that law enforcement officials must warn suspects of the statutory consequences before requesting consent to test); 
cf. Jones v. State
, 119 S.W.3d 766, 774 n.13 (Tex. Crim. App. 2003) (holding that “the mere passage of time does not, by itself, automatically obviate prior 
Miranda
 warnings,” but the totality of the circumstances will determine whether additional warnings were required).  Because the trial court’s ruling concerning the admissibility of Gates’s refusal is supported by the record
 
and is correct under transportation code section 724.015 and the cases interpreting it, we cannot say that the trial court abused its discretion by admitting testimony of Gates’s refusal.  
See
 
Carrasco
, 154 S.W.3d at 129.  We therefore overrule Gates’s second point.

B.
  
No Objection to Voluntariness

In his third point, Gates argues that his refusal of the blood test was not voluntary.  He contends that the police’s failure to warn him for a second time that his refusal to consent would be admissible against him rendered his refusal involuntary.  To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.  
Tex. R. App. P.
 33.1(a)(1); 
Mosley
, 983 S.W.2d at 265
.  Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court’s refusal to rule.  
Tex. R. App. P.
 33.1(a)(2); 
Mendez v. State
, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).

After seating the jury, the trial court heard Gates’s arguments that his refusal to submit to a blood test should not be admissible.  Gates did not object to the admission of his refusal on voluntariness grounds.  Because this contention was not presented to the trial court, it is not properly before us; we overrule Gates’s third point.  
See 
Tex. R. App. P.
 33.1(a)(1); 
Urquhart v. State
, 128 S.W.3d 701, 704 (Tex. App.—El Paso 2003, pet. ref’d) (holding that defendant failed to preserve complaint concerning voluntariness of refusal by failing to allege in the trial court specific grounds raised on appeal).

V.  Probable Cause

In his fourth point, Gates contends that the trial court erred by admitting evidence discovered after the stop because the stop was made without probable cause.  But all these complaints concerning the stop, whether constitutional, statutory, or otherwise, are forfeited by failure to comply with rule 33.1(a).  
Mendez
, 138 S.W.3d at 341.  Here, the issue of the validity of Officer Cosby’s initial stop of Gates’s car was not challenged in the trial court.  No motion to suppress appears in the record; the evidence seized from the car was admitted without objection as to the propriety of the stop.  Because Gates’s complaint regarding the alleged lack of probable cause supporting the stop of the vehicle was not presented to the trial court, it is not properly before us.  We overrule Gates’s fourth point on appeal.  
Id.
  

VI.  Conclusion

Having overruled points one through four, we affirm the trial court’s judgment.

SUE WALKER

JUSTICE

PANEL A: CAYCE, C.J.; DAUPHINOT and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: November 2, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
The prosecutor also conceded, “Your Honor, I would submit to the Court that there is error, but it’s harmless error.” 

3:
In fact, the videotape recording from the intoxylizer room shows that Officer Cosby did warn Gates a second time–approximately thirty minutes after the initial warning—and explained that if Gates refused to consent to the blood test that all of the things he had warned Gates of before would or could happen.